## WELLS v. STATE.

### Opinion delivered May 19, 1913.

1. ASSAULT—DEFINITION—WHAT CONSTITUTES.—Under Kirby's Digest, § 1583, defining an assault as "An unlawful attempt, coupled with present ability to commit a violent injury on the person of another," *held*, the intention and ability to commit a battery are necessary to constitute an assault, and an attempted act of violence to come within the definition of an assault, must have been made under such circumstances as made the infliction of an injury a reasonable probability. (Page 314.)

2. ASSAULT—RETREAT BY THREATENED PERSON.—Where defendant drew a knife, and, advancing on the prosecutor, threatened to cut his throat, and the prosecutor ran away, defendant is guilty of an assault, although he did not follow after prosecutor. (Page 315.)

3. ASSAULT—EVIDENCE—SUFFICIENCY.—Evidence held sufficient to warrant a conviction for assault. (Page 315.)

Appeal from Drew Circuit Court; *Henry W. Wells,* Judge; affirmed.

*Patrick Henry,* for appellant.

The evidence does not support a conviction for assault. Under the statute, there are three essential elements in the crime of assault, all of which must appear from the evidence before a conviction can be sustained, viz.: (1) an intent; (2) an unlawful attempt, and. (3) the present ability to commit a violent injury on the person of another.

The evidence affirmatively shows the absence of the third element of the offense in this case. 61 N. C. 434; 3 Greenleaf on Ev., § 59; Bishop, Crim. Law, § 419; 49 Ark. 179, 182; 77 Ark. 39; 88 Ark. 91; 89 Ark. 213.

*Wm. L. Moose,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

The evidence supports the verdict.

SMITH, J.   The appellant, Dave Wells, was indicted by the grand jury of Drew County for the crime of assault with intent to kill, alleged to have been committed "in and upon one Dallas Calhoun," and upon his trial for that offense, he was convicted of a simple assault, and fined the sum of $50. The appeal questions the sufficiency of the evidence to sustain that verdict. The assault was alleged to have been committed with a knife, and the appellant insists that the proof upon the part of the State shows that he was never at any time nearer than from seven to ten feet of the said Calhoun, and that he did not therefore have the present ability to inflict an injury with the knife.

Section 1583, of Kirby's Digest, defines an assault as follows: "An assault is an unlawful attempt coupled with present ability to commit a violent injury on the person of another." It is settled that both the intention and the ability to commit a battery are necessary to constitute an assault. *Pratt* v. *State,* 49 Ark. 179; *Jones* v. *State,* 89 Ark. 213. An assault is defined in volume 3, section 59, of Greenleaf on Evidence, as follows: "An assault is defined by the writers on criminal law to be an intentional attempt by force to do an injury to the person of another. This allegation, therefore, is proved by evidence of striking at another with or without a weapon, and whether the aim be missed or not; or of drawing a sword upon him; or of throwing any missile at him; or presenting a gun or pistol at him; the person assaulted being within probable reach of the weapon or missile. So, if one rush upon another, or pursues him with the intent to strike, and in a threatening attitude, but is

stopped immediately before he was within reach of the person aimed at, it is an assault.''

In Bishop's New Criminal Law, volume 2, section 23, it is said: ''An assault is any unlawful physical force, partly or fully, put in motion, creating a reasonable appearance of immediate physical injury to a human being, as raising a cane to strike at him, pointing in a threatening manner a loaded gun at him, and the like.'' And, dealing with the same subject, he further says: ''Words may explain and give character to acts and so combine with them as to make that an assault which, without them, would not have been such. For example  *  *  *  the brandishing or pointing of a weapon, when accompanied by threats, may constitute an assault under the circumstances wherein without them it would not.''

The language of the section of the statute quoted is plain, and its purpose is apparent. It does not contemplate that any act of violence shall have been actually inflicted, but only that it shall have been attempted under such circumstances as made the infliction of the injury a reasonable probability. In the case of *Keefe* v. *State,* 19 Ark. 190, a conviction was had for an assault, but it was urged that the verdict was contrary to the law and the evidence, because there was no actual attempt to shoot the person alleged to have been assaulted, although the defendant drew a pistol and cocked it, and pointed it toward the breast of the person alleged to have been assaulted, with the remark, ''If you do not pay me my money, I will have your life.'' Chief Justice ENGLISH discussed the purpose of the law, and quoted the following language from the case of *State* v. *Morgan,* 3 Iredell Law 186: ''Whenever the act is done in part execution of a purpose of violence, whether that purpose be absolute or provisional makes no difference as respects the question whether the act be an assault. In both cases, the assailant equally violates the public peace. In both he breaks down the barrier which the law has erected for the security of the citizen. In the former, he sets up none in its place. In the latter, he substitutes for it the protection of his grace and favor.''

Applying these principles to the facts of this case, we have no difficulty in reaching the conclusion that the evidence sustains the verdict. The prosecuting witness testified that he had been sent by his employer to make a settlement of some accounts with the appellant, and that he went to his house for that purpose. They had some discussion in regard to this settlement, when Calhoun said to appellant, "Mr. Wilson said that if you do not come clean, he will prosecute you for selling or killing some cattle." Appellant became very angry and cursed Calhoun for some time, when Calhoun said he would hear no more of it, and that appellant must "cut it cut." Whereupon, appellant ran his hand into his pocket and drew out his knife and remarked that he was going to cut Calhoun's throat. Calhoun began to back away, and backed for ten or fifteen feet, during which time appellant was advancing upon him with a drawn knife, which the witness said appeared to him to be a big dirk. Calhoun called to a Mr. McEllee, who was standing near, and said: "Mr. McEllee, won't you come here; that negro will kill me." But McEllee said: "I can't do nothing for you." Whereupon, Calhoun backed around behind a team that was standing near and ran to a house a quarter of a mile away, and left his own horse and buggy at appellant's house, where it remained until appellant left for Pine Bluff. Appellant did not attempt to follow Calhoun as he ran away. But it was not necessary that he do so to constitute the offense of a simple assault. The law on that subject is designed to preserve the peace, and to prevent acts of violence, and the putting in fear of violence. Calhoun obeyed the law by retreating to a place of safety, but appellant has no right to say that Calhoun should have done so, and because he did do so, it was not possible for appellant to cut him. Had Calhoun been armed, he might not have retreated and a homicide might have been committed; and had he not retreated, violence would have been done, had appellant executed his threats. Appellant will not be permitted to say that Calhoun's observance of the law made it impossible for him to break it. This law should be suffi-

cient to protect one from the humiliation of being compelled to retreat, but, if not, then it punishes that person who forces another to do so, to prevent the infliction of a bodily injury.

Incidentally, it may be said the settlement was not made. The judgment is affirmed.